# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES MOORE,<br><br>        Plaintiff,<br><br>    v.<br><br>KEN CLARK, WARDEN, et al.,<br><br>        Defendants.<br>_____/ | CASE NO. 1:09-cv-01961-AWI-MJS (PC)<br><br>COMPLAINT DISMISSED WITH LEAVE TO AMEND<br><br>(ECF No. 1)<br><br>AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |

### SCREENING ORDER

**I.  PROCEDURAL HISTORY**

Plaintiff Charles Moore ("Plaintiff") is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on November 9, 2009. (ECF No. 1.) No other parties have appeared in the action.

Plaintiff's Complaint is now before the Court for screening. For the reasons set forth below, the Court finds that Plaintiff's Complaint fails to state a claim.

1

## II. SCREENING REQUIREMENTS

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 129 S.Ct. at 1949.

## III. SUMMARY OF COMPLAINT

Plaintiff claims the violation of his First Amendment rights through retaliatory tactics and violation of his Fourteenth Amendment due process rights. He names the following individuals as Defendants: Ken Clark, Warden at Substance Abuse Treatment Facility

2

("SAT-F") State Prison; Director of Corrections, Director; Derral G. Adams, Warden at Corcoran State Prison; and F. Field, Corcoran State Prison Secured Housing Unit Facility 4 B.

Plaintiff alleges the following: On October 1, 2008 at approximately 7:00 a.m., Sergeant Vogel told Plaintiff that he was being moved from his then-current facility (4BIL - Enhanced Out Patient ("EOP") Housing Unit at Corcoran State Prison) to another facility. Sergeant Vogel demanded Plaintiff put handcuffs on in preparation for the move. Plaintiff refused, stating that he had not received written notification of the move or a hearing as required by prison regulations. Sergeant Vogel left and Lieutenant Pina arrived at Plaintiff's cell to inform him that he was being moved because his medical level of care had been changed to include mental health services and clinical case management. Plaintiff asked to see the written documentation. Lieutenant Pina produced a mental health chrono verifying the change. Unsatisfied, Plaintiff asked to see further documentation for the move. Lieutenant Pina stated that this was a special transfer pursuant to a different regulation than what Plaintiff cited.

Plaintiff read the section cited by Lieutenant Pina and explained that the actions described in that section were illegal because SAT-F Prison was not an EOP Special Housing Unit within the meaning of the regulation. Plaintiff then informed Pina that the chrono changing his status was suspect and null and void because Plaintiff was already housed in an EOP Special Housing Unit at Corcoran. Citing other prison regulations regarding parole board procedures, Plaintiff continued to argue and resist the move.

Since Plaintiff would not comply, Lieutenant Pina told Sergeant Vogel to use a chemical weapon. Sergeant Vogel assembled a team and that team extracted Plaintiff

3

from his cell. Plaintiff was then transferred to the other facility.

After the move, Plaintiff filed an emergency 602 grievance describing the incident. Appeals Coordinator L. Cano denied the emergency grievance. On October 15, 2009, Plaintiff filed a citizen's complaint with Defendant Clark. Defendant Clark failed to investigate the incident.

Based on these claims, Plaintiff seeks investigation by the Federal Bureau of Investigation, injunctive relief, protection from the courts, compensatory damages, emotional distress damages, punitive damages, and an apology to the public for this wrongful burden on California budgetary problems.

## IV. ANALYSIS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).

### A. Retaliation Claim

Plaintiff states that he is being retaliated against by Defendant Adams for exercising his constitutional rights.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an

4

inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff has failed to plead facts sufficient to sustain a claim of retaliation by prison officials. Plaintiff claims that Defendant Adams ordered the move in retaliation for Plaintiff threatening to file a lawsuit. Plaintiff states that he had previously sent Defendant Adams a 602 grievance form with jury verdicts acquitting Plaintiff of the charges of attempted murder attached, proving, at least in Plaintiff's mind, that he was being unlawfully detained. Plaintiff had also informed Defendant of his intention to bring a lawsuit regarding this unlawful detention.

Filing a grievance is a protection action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). Transferring a prisoner can be an adverse action sufficient to satisfy the retaliation standard. See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (retaliatory prison transfer and double-cell status states a claim for retaliation). Thus, Plaintiff has satisfied the first and third prongs of the retaliation standard.

With respect to the fourth prong, the proper inquiry is not whether the complained-of action actually chilled Plaintiff's exercise of his First Amendment rights. "[It] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity. . . ." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary

firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300). Though Plaintiff has failed to plead any facts indicating his exercise of First Amendment rights was chilled by the ordered transfer, the Court finds that he has satisfied the fourth prong because a person of ordinary firmness would be so chilled by such activities.

The second element of a prisoner retaliation claim focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Morgan, 874 F.2d at 1314). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent"). Plaintiff has failed to allege any facts showing that his transfer was related to his litigation activity. Thus, Plaintiff has failed to state adequate facts to satisfy the second prong of his retaliation claim.

With respect to the fifth prong, a prisoner must affirmatively allege that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532. Though this is not a high burden, see id. (prisoner's allegations that search was arbitrary and capricious sufficient to satisfy this inquiry), it appears that the transfer was related to Plaintiff's need for mental health services, i.e., to serve a legitimate penological goal, and

6

Plaintiff has alleged no facts to the contrary. As such, Plaintiff has failed to satisfy the fifth prong of a retaliation claim.

Because Plaintiff has failed to allege sufficient facts to satisfy all five prongs of his retaliation claim, he has failed to state a claim upon which relief could be granted. The Court will give Plaintiff leave to amend and cure the deficiencies noted herein.

### B.     Due Process Claims

Plaintiff claims that his rights to due process were violated when he did not receive the required documentation or hearing before being forced to transfer to a different facility.

The Due Process Clause protects against the deprivation of liberty without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Id. Liberty interests may arise from the Due Process Clause itself or from state law. Id. The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Id. Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

Plaintiff does not have a constitutional right to determine his own housing placement. Meachum v. Fano, 427 U.S. 215, 225 (1976). Thus, if such a right exists, it must be created by California in a manner that gives rise to a liberty interest. The definition

7

of a state created liberty interest usually means the state has established "substantive predicates" to govern official decision-making and mandates the outcome to be reached upon a finding that the relevant criteria have been met. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460-62 (1989).

It appears that Plaintiff is contending that the prison regulations create a liberty interest which was not honored or protected in his case.  Though Plaintiff cites several regulations, the Court does not have ready access to them and he fails to include their text or explain the interests they create.  Thus, the Court finds that Plaintiff fails to state a claim and grants Plaintiff leave to amend.

If Plaintiff attempts to pursue this claim in his Amended Complaint, he should recognize that courts repeatedly find no liberty interest created by penal codes. See Olim v. Wakinekona, 461 U.S. 238, 245-48 (1983) (finding no liberty interest in Hawaii statute on housing placement); Aggers v. Tyson, 2010 WL 4867602, *1 (E.D. Cal. Nov. 15, 2010) (finding that Penal Code § 5068 does not create a liberty interest protected by the due process clause).

**C.    Denial of Access to Courts Claim**

Plaintiff alleges that he was denied access to the courts by Defendants.

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996).  However, the right is limited to direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354.  Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15

(2002). Forward-looking claims allege "that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." Christopher, 536 U.S. at 413. In these cases that have yet to be litigated, "the justification for recognizing that [forward-looking] claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." Id. As part of the requirement to plead an injury, a plaintiff must allege that "a nonfrivolous legal claim had been frustrated or was being impeded." Lewis, 518 U.S. at 353; see also Christopher, 536 U.S. at 415. Simply stating that a claim is "nonfrivolous" due to the action of a government official will not satisfy the actual injury requirement. Christopher, 536 U.S. at 415. Rather, the nonfrivolous "underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." Id. at 416. The plaintiff must describe this "predicate claim . . . well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." Id. The complaint should "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a) just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." Id. at 417-18; see Lewis, 518 U.S. at 353 n. 3 ("Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value-arguable claims are settled, bought and sold. Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all, except perhaps the punishment of Rule 11 sanctions.").

When a prisoner asserts that he was denied access to the courts and seeks a remedy for a lost opportunity to present a legal claim, he must show: (1) the loss of a

non-frivolous or arguable underlying claim; (2) the official acts that frustrated the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007) (citing Christopher, 536 U.S. at 413-414, overruled on other grounds, Hust v. Phillips, 129 S.Ct. 1036 (2009)).

The Court has difficulty discerning what facts Plaintiff alleges support his denial of access to the courts claim. He states that he has been denied access to legal property and legal materials and that his 602 grievances have been mishandled. He states that he intended to bring an action against Defendant Adams, but does not specifically link his claim against Adams to his denial of access to the courts. Moreover, although Plaintiff appears to contend that he was frustrated in his attempts to bring an action against Adams, it appears from an attachment to Plaintiff's Complaint that there was an action against Defendant Adams in progress at the time of the incident. (ECF No. 1, Pl.'s Compl. p. 17.)

Having reviewed the allegations in the Complaint, the Court finds that Plaintiff has failed to state a claim for denial of access to the courts. Plaintiff fails to describe in detail any action that he has been unable to pursue and also fails to demonstrate how such action would not be frivolous. Thus, the Court dismisses this claim and will grant Plaintiff leave to amend.

### D. **Excessive use of Force Claim**

Though not explicitly stated, Plaintiff appears to be claiming that Defendants used excessive force in violation of his constitutional rights.

The analysis of an excessive force claim brought pursuant to Section 1983 begins with "identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989). The Eighth

10

Amendment's prohibition on cruel and unusual punishment applies to incarcerated individuals, such as the Plaintiff here. Whitley v. Albers, 475 U.S. 312, 318 (1976). To state an Eighth Amendment claim, a plaintiff must allege that the use of force was "unnecessary and wanton infliction of pain." Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Hudson v. McMillian, 503 U.S. 1, 9 (1992); see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

Whether force used by prison officials was excessive is determined by inquiring if the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7. The Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. See Whitley, 475 U.S. at 321. The absence of significant injury alone is not dispositive of a claim of excessive force. See Wilkens v. Gaddy, 130 S.Ct. 1175, 1176-77 (2010).

Plaintiff states that prison officials used a chemical weapon on him when he refused to comply with their orders.  However, he also states that both Sergeant Vogel and Lieutenant Pina responded to Plaintiff's request for documentation of the propriety of his move at Plaintiff's reqest and only used force when Plaintiff continued to refuse to comply with their directions.

Plaintiff has failed to state a claim for excessive use of force.  As currently pleaded by Plaintiff, it appears that the force used by prison officials was necessary to ensure compliance with their orders.  Further, neither Sergeant Vogel nor Lieutenant Pina, the alleged perpetrators of this excessive fore,  are named as Defendants.  Instead, it appears that Plaintiff is attributing this action to Defendants Adams and Fields, neither of whom were present when the force was utilized.  Upon amendment, if Plaintiff chooses to pursue this claim, he must either include new Defendants or attribute liability to a named Defendant.

### E.    Inmate Appeals Process Claim

Plaintiff appears to be alleging that Defendants mishandled his grievance forms.

Defendants' actions in responding to Plaintiff's appeals alone cannot give rise to any claims for relief under Section 1983 for violation of due process.  "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates."   Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams,

12

855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability under a Section 1983 action. Buckley, 997 F.2d at 495.

Because Plaintiff has neither a liberty interest nor a substantive right in inmate appeals, Plaintiff fails to state a claim in this regard. Because amendment of this claim would be futile, the Court advises Plaintiff that he would be well-served by devoting his energy to pursuing his other claims.

### F.     Violating Prison Policy Claim

It appears that Plaintiff is alleging that Defendants violated prison policy or regulations through their actions or inactions. An allegation that a defendant violated a prison policy is not sufficient to state a constitutional claim. See Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997) (no Section 1983 liability for violation of prison policy)) . "In order to set forth a claim under 42 U.S.C. § 1983, an inmate must show a violation of his constitutional rights, not merely a violation of prison policy." Moore v. Schuetzle, 486 F.Supp.2d 969, 989 (D.N.D. 2007). Accordingly, Plaintiff's allegation that Defendants violated Section 1983 by failing to comply with a prison regulation fails to state a claim upon which relief could be granted.

### G.     Property Claims

It appears that Plaintiff could be making some claim for denial of access to his property either under due process or the Fourth Amendment.

13

1. Due Process

The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974) and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, Hudson v. Palmer, 468 U.S. 517, 532 n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available," Hudson, 468 U.S. at 533.

California Law provides an adequate post-deprivation remedy for any property deprivations. See Cal. Gov't Code §§ 895; Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994). California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2006). Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 90 P.3d 116, 123 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Superior Court, 90 P.3d at 123; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

Plaintiff states that he was denied access to his legal property (ECF No. 1, Pl.'s Compl. p. 3), but he fails to elaborate by, for example, identifying the property or stating how or how long he was denied access to it. Plaintiff also fails to offer proof of compliance with the California Tort Claims Act. Thus, Plaintiff has failed to allege facts sufficient to find a violation of his due process rights. The Court will grant Plaintiff leave to amend his Complaint on this claim.

### 2. Fourth Amendment

The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.'" U.S. v. Jacobsen, 466 U.S. 109, 113-114 (1984). Under the Fourth Amendment a seizure of property "occurs when there is some meaningful interference with an individual's possessory interest in that property." Id. at 113. The United States Supreme Court has held that "the Fourth Amendment has no applicability to a prison cell." Hudson, 468 U.S. at 536. Further, the Court noted, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." Id. at 528 n. 8.

Because there is no Fourth Amendment applicability in a prison cell, any claim raised by Plaintiff in this regard fails.

### H. Personal Participation and Supervisory Liability

Inasmuch as Defendants Clark, Adams, Field, and Director of Corrections are not alleged to have been present or to have participated directly in the complained-of conduct, Plaintiff apparently is alleging they are vicariously liable for the conduct of their subordinates.

Under Section 1983, Plaintiff must demonstrate that each named Defendant

personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. Iqbal, 129 S.Ct. at 1949. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Id. at 1948. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id. at 1948-49.

When examining the issue of supervisor liability, it is clear that the supervisors are not subject to vicarious liability, but are liable only for their own conduct. Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001); Wesley v. Davis, 333 F.Supp.2d 888, 892 (C.D.Cal. 2004). In order to establish liability against a supervisor, a plaintiff must allege facts demonstrating (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Jeffers, 267 F.3d at 915; Wesley, 333 F.Supp.2d at 892. The sufficient causal connection may be shown by evidence that the supervisor implemented a policy so deficient that the policy itself is a repudiation of constitutional rights. Wesley, 333 F.Supp.2d at 892 (internal quotations omitted). However, an individual's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement. Id. (internal quotations omitted).

Supervisor liability under Section 1983 is a form of direct liability. Munoz v. Kolender, 208 F.Supp.2d 1125, 1149 (S.D.Cal. 2002). Under direct liability, Plaintiff must

show that Defendant breached a duty to him which was the proximate cause of his injury. Id. "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson v. Duffy, 588 F.2d 740, 743-744 (9th Cir. 1978)).

The only allegations against these supervisory Defendants are that Defendant Adams ordered the transfer, Defendant Field agreed with Adams's decision, and Defendant Clark did not respond to Plaintiff's "citizen's complaint". Plaintiff does not mention the Director of Corrections in his statement of the case. Plaintiff has not alleged facts demonstrating that any of the supervisory Defendants personally acted to violate his rights. Plaintiff shall be given the opportunity to file an amended complaint curing the deficiencies in this respect. In his amended complaint, Plaintiff needs to specifically link each Defendant to a violation of his rights.

### I.   State Tort Claims

Plaintiff alleges kidnapping, assault, and robbery against Defendants. The Court does not reach the viability of Plaintiff's state law tort claims at this time because the Court will not exercise supplemental jurisdiction over state law claims unless Plaintiff is able to state a cognizable federal claim. 28 U.S.C. § 1367(a); Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 805 (9th Cir. 2001).

### J.   Doe Defendants

Plaintiff names as a Defendant Director of Corrections, which the Court assumes is a substitute for an actual individual's name, much like John Doe.

"As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). "It is permissible to use Doe defendant designations in a complaint to refer to defendants whose names are unknown to plaintiff. Although the use of Doe defendants is acceptable to withstand dismissal of a complaint at the initial review stage, using Doe defendants creates its own problem: those persons cannot be served with process until they are identified by their real names." Robinett v. Correctional Training Facility, 2010 WL 2867696, *4 (N.D.Cal. July 20, 2010). Plaintiff is advised that Defendant Director of Corrections can not be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute the Defendant's actual names. The burden remains on Plaintiff to promptly discover the full name of Defendant Director of Corrections; the Court will not undertake to investigate the names and identities of unnamed defendants. Id.

The Court will grant Plaintiff leave to amend this claim and attempt to set forth sufficient identification.

### K.     Habeas Claim

Plaintiff makes several statements to the effect that he is being wrongfully detained in custody by the CDCR. When a prisoner challenges the legality or duration of his custody, or raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475, 498-500 (1973); Young v. Kenny, 907 F.2d 874, 875-76 (9th Cir. 1990), cert. denied 11 S.Ct. 1090 (1991). If Plaintiff is indeed complaining about the legality or duration of his custody, Plaintiff's civil rights complaint will be dismissed entirely. In his Amended Complaint, Plaintiff should describe his allegations and claims regarding his allegedly

unlawful detention in more detail to allow the Court to determine whether his allegations should be filed as a civil rights action or a petition for writ of habeas corpus.

## V. CONCLUSION AND ORDER

The Court finds that Plaintiff's Complaint fails to state any Section 1983 claims upon which relief may be granted. The Court will provide Plaintiff time to file an amended complaint to address the potentially correctable deficiencies noted above. See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). In his Amended Complaint, Plaintiff must demonstrate that the alleged incident or incidents resulted in a deprivation of his constitutional rights. Iqbal, 129 S.Ct. at 1948-49. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Plaintiff must also demonstrate that each defendant personally participated in the deprivation of his rights. Jones, 297 F.3d at 934.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims or defendants, other than as requested by the Court. Plaintiff should focus the amended complaint on claims and defendants relating solely to issues arising out of the incident on October 1, 2008.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint,"

refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed for failure to state a claim, with leave to file an amended complaint within thirty (30) days from the date of service of this order;

2. Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:09-cv-01961-AWI-MJS (PC); and

3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:   December 25, 2010         /s/ *Michael J. Seng*
ci4d6                              UNITED STATES MAGISTRATE JUDGE

20